**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:    (818) 532-6499
E-mail: jpafiti@pomlaw.com
- *additional counsel on signature page* -

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMRA KUC, Individually and on Behalf of All Others Similarly Situated,<br><br>                                                    Plaintiff,<br><br>                    vs.<br><br> LION BIOTECHNOLOGIES, INC., MANISH SINGH, MICHAEL HANDELMAN and ELMA HAWKINS,<br><br>                                                    Defendants | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Amra Kuc ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Lion Biotechnologies, Inc. ("Lion" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

**NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired common shares of Lion between November 14, 2013 and April 10, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.     Lion Biotechnologies, Inc., a clinical-stage biotechnology company, focuses on developing and commercializing cancer immunotherapy products to harness the power of a patient's immune system to eradicate cancer cells.

3.     Founded in 2007, the Company was formerly known as "Genesis Biopharma Inc." and changed its name to Lion Biotechnologies, Inc. in September 2013.  Lion is headquartered in New York and its stock trades on the NASDAQ under the ticker symbol "LBIO."

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lion, through the Company's former Chief Executive Officer ("CEO"), Defendant Manish Singh ("Singh"), engaged in a scheme to mislead investors by commissioning over 10 internet publications and 20 widely distributed emails promoting Lion to potential investors that purported to be independent from the Company when, in fact, they were paid promotions; (ii) Defendant Singh engaged a notorious stock promotion firm to pay writers to publish articles about Lion on investment websites as well as to coordinate the distribution of articles to thousands of electronic mailboxes; (iii) Defendant Singh actively participated in Lidingo's promotional work for Lion and understood that Lidingo was using writers who would not

disclose that Lion was indirectly compensating them for their publications; and (iv) as a result of the foregoing, Lion's public statements were materially false and misleading at all relevant times.

5.    On April 10, 2017, the SEC found that between September 2013 and March 2014, the Company's former CEO Manish Singh, misled investors by commissioning over 10 internet publications and 20 widely distributed emails that purported to be independent from the Company and promoted Lion to potential investors, which were in fact paid promotions.  On the next day, the Company filed a Current Report on Form 8-K with the SEC, addressing the SEC's findings, stating in relevant part:

> On April 10, 2017, the SEC announced settlements with us and with other public companies and unrelated parties in the *In the Matter of Certain Stock Promotion* investigation. The announcement can be viewed at the SEC's website at http://www.sec.gov. Our settlement with the SEC is consistent with our previously disclosed settlement offer (including in our Form 10-K that we filed with the SEC on March 9, 2017), and consists of the following: (i) We agreed, without admitting or denying the findings by the SEC, to the entry of an administrative order that requires us to cease and desist from committing or causing any violations and any future violations of Sections 5(b), 17(a), and 17(b) of the Securities Act of 1933, and of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, and (ii) we agreed to pay $100,000 as a civil money penalty. We also agreed to adopt certain internal controls with respect to our investor relations/public relations activities.

6.    On news of the SEC's findings, Lion's share price fell $0.50, or 7.63% over the following trading days, to close at $6.05 on April 13, 2017.

7.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  Lion's principal executive offices are located within this Judicial District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

12.     Plaintiff, as set forth in the accompanying Certification, purchased common shares of Lion at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

13.     Defendant Lion is incorporated in Nevada.  The Company's offices are located in 999 Skyway Road, Suite 150, San Carlos, California 94070 and 112 W 34th Street, 17th Floor, New York, New York 10120.  Lion's shares trade on the NASDAQ under the ticker symbol "LBIO."

14.     Defendant Singh served as the Company's CEO from July 24, 2013 to December 31, 2014, and served as President from July 2013 to August 20, 2014.

15.     Defendant Michael Handelman ("Handelman") served as the Company's Chief Financial Officer ("CFO") and Secretary from February 7, 2011 to June 8, 2015.

16.     Defendant Elma Hawkins ("Hawkins") served as the Company's President from August 21, 2014 to June 1, 2016, and served as CEO from January 1, 2015 to June 1, 2016.

17.     The defendants referenced above in ¶¶ 14-16 are sometimes referred to herein as the "Individual Defendants."

18.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Lion Biotechnologies, Inc., a clinical-stage biotechnology company, focuses on developing and commercializing cancer immunotherapy products to harness the power of a patient's immune system to eradicate cancer cells.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on November 14, 2013, when Lion filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2013 (the "Q3 2013 10-Q").  The Q3 2013 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Singh and Handelman, stating that the financial information contained in the Q3 2013 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

21.     On March 28, 2014, Lion filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter ended December 31, 2013 (the "2013 10-K").  The 2013 10-K contained signed certifications pursuant to SOX by Defendants Singh and Handelman, stating that the financial information contained in the 2013 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

22.     The statements referenced in ¶¶ 20-21 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Lion, through Defendant Singh, engaged in a scheme to mislead investors by commissioning over 10 internet publications and 20

widely distributed emails promoting Lion to potential investors that purported to be independent from the company when, in fact, they were paid promotions; (ii) Defendant Singh engaged a notorious stock promotion firm to pay writers to publish articles about Lion on investment websites as well as to coordinate the distribution of articles to thousands of electronic mailboxes; (iii) Defendant Singh actively participated in Lidingo's promotional work for Lion and understood that Lidingo was using writers who would not disclose that Lion was indirectly compensating them for their publications; and (iv) as a result of the foregoing, Lion's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

23.     On May 14, 2014, Lion filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2014 (the "Q1 2014 10-Q").  The Q1 2014 10-Q contained signed certifications pursuant to SOX by Defendants Singh and Handelman, stating that the financial information contained in the Q1 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     In the Q1 2014 10-Q, the Company stated in relevant part:

On April 23, 2014, the Company received a subpoena from the Securities Exchange Commission (the "SEC") that stated that the staff of the SEC is conducting an investigation *In the Matter of Galena Biopharma, Inc. File No. HO 12356* and that the subpoena was issued to the Company as part of the foregoing investigation.  Galena Biopharma is an unaffiliated, publicly-held biopharmaceutical company.  In the Form 10-K that Galena Biopharma, Inc. filed with the SEC on March 17, 2014, Galena Biopharma stated that the SEC is investigating certain matters relating to Galena Biopharma and an outside investor-relations firm that it retained in 2013.  The SEC's subpoena and accompanying letter do not indicate whether the Company is, or is not, under investigation.  The Company has contacted the SEC's staff regarding the subpoena, and the Company is cooperating with the SEC.

The subpoena requires the Company to give the SEC, among other materials, all communications between anyone at the Company and certain persons and entities (which include investor-relations firms and persons associated with the investor-relations firms), all documents related to the listed persons and entities, all articles regarding the Company posted on certain equity research or other financial websites, and documents and

communications related to individuals who post or have posted articles regarding the Company on equity research or other financial websites.

There are no other pending legal proceedings to which the Company is a party or of which its property is the subject.

25.    On the news of the SEC's subpoena, Lion's shares fell $1.23 or over 13.9%, over the following two trading days to close at $7.95 per share on May 15, 2014.

26.    On August 8, 2014, Lion filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2014 (the "Q2 2014 10-Q"). The Q2 2014 10-Q contained signed certifications pursuant to SOX by Defendants Singh and Handelman, stating that the financial information contained in the Q2 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.    On November 12, 2014, post market, Lion issued a press release entitled "Lion Biotechnologies Announces Management Change," announcing the resignation of Defendant Singh, stating in relevant part:

> **LOS ANGELES, CA** (November 12, 2014) – Lion Biotechnologies, Inc. (LBIO), a biotechnology company that is developing novel cancer immunotherapies based on tumor infiltrating lymphocytes (TILs), today announced that its chief executive officer Manish Singh, PhD, is resigning for personal reasons, effective December 31, 2014. In addition, Dr. Singh is stepping down as a director of Lion, effective immediately. The company's board of directors intends to appoint a new CEO prior to Dr. Singh's departure.
>
> For the remainder of this year, Dr. Singh will stay actively involved in Lion's management as the company prepares to file an investigational new drug application before year-end to support a Phase 2 clinical trial in metastatic melanoma, which trial the company currently expects to initiate in the first quarter of 2015.

28.    On this news, Lion's shares fell $0.75, or over 11%, to close at $5.95 per share on November 13, 2014.

29.    On November 13, 2014, Lion filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2014 (the "Q3 2014 10-Q"). The Q3 2014 10-Q contained signed certifications pursuant to SOX by

Defendants Singh and Handelman, stating that the financial information contained in the Q3 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.    On March 16, 2015, Lion filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter ended December 31, 2014 (the "2014 10-K").  The 2014 10-K contained signed certifications pursuant to SOX by Defendants Hawkins and Handelman, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.    On April 10, 2017, the SEC found that between September 2013 and March 2014, the Company's former CEO Manish Singh, misled investors by commissioning over 10 internet publications and 20 widely distributed emails that purported to be independent from the Company and promoted Lion to potential investors, which were in fact paid promotions.  On the next day, the Company filed a Current Report on Form 8-K with the SEC, addressing the SEC's findings, stating in relevant part:

> On April 10, 2017, the SEC announced settlements with us and with other public companies and unrelated parties in the *In the Matter of Certain Stock Promotion* investigation. The announcement can be viewed at the SEC's website at http://www.sec.gov. Our settlement with the SEC is consistent with our previously disclosed settlement offer (including in our Form 10-K that we filed with the SEC on March 9, 2017), and consists of the following: (i) We agreed, without admitting or denying the findings by the SEC, to the entry of an administrative order that requires us to cease and desist from committing or causing any violations and any future violations of Sections 5(b), 17(a), and 17(b) of the Securities Act of 1933, and of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, and (ii) we agreed to pay $100,000 as a civil money penalty. We also agreed to adopt certain internal controls with respect to our investor relations/public relations activities.

32.    On news of the SEC's findings, Lion's share price fell $0.50, or 7.63% over the following trading days, to close at $6.05 on April 13, 2017.

33.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Lion common shares traded on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Lion common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Lion or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Lion;

- whether Defendants caused Lion to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Lion securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Lion common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold Lion common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

43.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.    This Count is asserted against Lion and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.    During the Class Period, Lion and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and

11

failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46.     Lion and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Lion common shares during the Class Period.

47.     Lion and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Lion were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Lion, their control over, and/or receipt and/or modification of Lion allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Lion, participated in the fraudulent scheme alleged herein.

48.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Lion personnel to members of the investing public, including Plaintiff and the Class.

49.    As a result of the foregoing, the market price of Lion common shares was artificially inflated during the Class Period.  In ignorance of the falsity of Lion's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Lion common shares during the Class Period in purchasing Lion common shares at prices that were artificially inflated as a result of Lion's and the Individual Defendants' false and misleading statements.

50.    Had Plaintiff and the other members of the Class been aware that the market price of Lion common shares had been artificially and falsely inflated by Lion's and the Individual Defendants' misleading statements and by the material adverse information which Lion's and the Individual Defendants did not disclose, they would not have purchased Lion's common shares at the artificially inflated prices that they did, or at all.

51.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

52.    By reason of the foregoing, Lion and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Lion common shares during the Class Period.

### COUNT II

**Violation of Section 20(a) of The Exchange Act**
**<u>Against The Individual Defendants</u>**

53.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.    During the Class Period, the Individual Defendants participated in the operation and management of Lion, and conducted and participated, directly and indirectly, in the conduct of Lion's

business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

55.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Lion's financial condition and results of operations, and to correct promptly any public statements issued by Lion which had become materially false or misleading.

56.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Lion disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Lion to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Lion within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Lion common shares.

57.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Lion.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: April 19, 2017

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com
E-mail: hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com
*Attorneys for Plaintiff*